IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:06cv66

| | |
|---|---|
| ATTIC TENT INC., ) | |
|     Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | MEMORANDUM AND ORDER |
| JERRY L. COPELAND & PROGRESSIVE ) | |
|  ENERGY SOLUTIONS, ) | |
|     Defendants. ) | |
| ) | |

In this patent infringement case plaintiff, Attic Tent, Inc. accuses the defendants Jerry L. Copeland & Progressive Energy Solutions of manufacturing, selling or offering to sell products that infringe United States reissue Patent No. Re 36,975 (the '975 patent). Jurisdiction is present under 28 U.S.C. § 1338(a). Presently before the Court is plaintiff's motion for a preliminary injunction to bar defendants from manufacturing, selling or offering to sell its allegedly infringing product. (Doc. No. 4) On February 28, 2006, the Court conducted a hearing, after which the matter was taken under advisement. Having reviewed the record, Court concludes that plaintiff has not made a sufficiently strong showing of ultimate likelihood of success on the merits nor irreparable harm, and therefore plaintiff's motion is denied. The reasons for this decision follow.

BACKGROUND

The invention disclosed in the '975 patent relates to an "Attic Hatchway Cover," which is essentially a box-shaped, insulative cover that is mounted upon a surrounding framework. The

1

material claims of the '975 patent are as follows:[1]

>   Independent Claim 1 upon which Claims 2-6 ultimately depend, recites:
>
>   > An attic hatchway cover arranged for securement onto a framework of an attic opening, wherein the cover comprises, a first side wall spaced from a second side wall and a front wall connected to a rear wall, wherein the front wall is fixedly and obliquely secured to the first side wall and the second side wall, and the rear wall is obliquely and fixedly secured to the first side wall and the second side wall, and the rear wall spaced from the front wall, a top wall exiending coextensively to the front wall, the first side wall, the second side wall, and the rear wall to define a cavity within the cover, and the top wall having a zipper member, and the zipper member having a first end spaced from a second end, and the top wall having a flap hingedly secured to the top wall between the first end and the second end, and selectively secured to the top wall through the zipper member, wherein the front wall, the rear wall, the first side wall, and the second side wall are each of a rigid construction.

Independent Claim 7 upon which Claims 8-12 ultimately depend also provides for walls of "rigid construction."

The description of the preferred embodiment of the invention is substantially similar to the product described in claims 1 and 7. However, whereas claims 1 and 7 of the '975 patent refer to walls of *rigid* construction, the description of the preferred embodiment provides that the "first side wall, the second side wall, the front wall, and the rear wall are typically of a *rigid* or at least *semi-rigid* construction, wherein the top wall may be flexible in nature."

---

[1] Plaintiff's original patent, United States Patent No. 5,481,833 (the '833 patent) was issued in January 1996. Approximately two years later, plaintiff filed a reissue application, after which the reissue patent, Re. 36,975, was granted in December 2000. Claims 1-6 of the '975 patent are identical to the claims disclosed in plaintiff's original application. Claims 7-12 of the '975 patent are not present in the original application.

In addition to the '833 and '975 patents, plaintiff provided a copy of the examiner's statement of reasons for the amendment and a copy of U.S. Patent 4,337,602 (the "King Patent"). The King patent provides, in pertinent part, for "an enclosure for insulating a ceiling entrance by utilizing a preferably flexible envelope supported on a few vertical posts." The examiner's statements of reasons for allowance provides that the "claims to walls of a *rigid* construction are allowable because none of the prior art adequately teaches or suggests a cover having a combination of rigid front, rear, and side walls with a top wall have a zipper member selectively securing a hingedly secured flap." (Emphasis added.) No further description of rigid, semi-rigid, or flexible was provided and no other portions of the file history were offered.

OPINION

A. Standard of Review

Injunctive relief the preliminary stages of litigation is considered to be an extraordinary remedy that should be exercised when, in the Court's discretion, such relief is necessary to protect the legal rights of the plaintiff pending the litigation. The Court's discretion is not absolute and "must be measured against the standards governing the issuance of an injunction." Hybritech Inc. v. Abbot Labs., 849 F.2d 1446, 1451 (Fed. Cir. 1988).

To obtain a preliminary injunction pursuant to 35 U.S.C. § 283, a party must demonstrate that: 1) it has a reasonable likelihood of success on the merits; 2) it would suffer irreparable harm if the injunction were not granted; 3) the balance of relative hardships tips in its favor; and 4) an injunction would not have a negative impact on the public interest. See id.; L.J. By and Through Darr v. Massinga, 838 F.2d 118, 120 (4th Cir.1988), cert. denied, 488 U.S. 1018, 109 S.Ct. 816, 102 L.Ed.2d 805 (1989). None of the four factors may be ignored before granting a preliminary

injunction and each must be considered and weighed against the other factors and against the form and magnitude of the relief requested. Intel Corp. v. ULSI System Technology, Inc., 995 F.2d 1566, 1568 (Fed. Cir. 1993); Amazon.com, Inc. v. Barnesandnoble.com, Inc., 239 F.3d 1343, 1350 (Fed. Cir. 2001). However, before denying a motion for a preliminary injunction, the Court need not make findings concerning the balance of hardships or on the public interest if the moving party fails to establish either likelihood of success on the merits or irreparable harm. Polymer Technologies, Inc. v. Bridwell, 103 F.3d 970, 973-974 (Fed. Cir. 1996).

### B. Likelihood of Success

It is plaintiff's burden to demonstrate that, if this controversy were to be tried, it would prevail in proving by a preponderance of the evidence that defendants are infringing the '975 patent and that the defendants would not successfully prove by clear and convincing evidence that the '975 patent is invalid. If plaintiff clearly establishes a likelihood of success, it is entitled to a rebuttable presumption that it would be irreparably harmed if a preliminary injunction were not to issue. Bell & Howell Document Management Products Co. v. Altek Systems, 132 F.3d 701, 705 (Fed. Cir. 1997). In the instant case, plaintiff accuses defendants of manufacturing, selling or offering to sell a product that literally infringes the claims of the '975 patent.

1. Literal Infringement

A literal infringement analysis involves two steps: first, the claims must be properly construed to determine their scope; and second, the claims must be compared to the accused device. See id.; Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996).

Claim interpretation is a question of law. Markman, 52 F.3d at 979. The Court first considers the literal language of the claim, which defines the scope of the claim. See York Prods., Inc. v. Central Tractor Farm & Family Ctr., 99 F.3d 1568, 1572 (Fed. Cir. 1996). In analyzing claim language, the Court employs the "normal rules of syntax," Eastman Kodak Co. v. Goodyear Tire & Rubber Co., 114 F .3d 1547, 1553 (Fed. Cir. 1997); see also In re Hyatt, 708 F.2d 712, 714 (Fed. Cir. 1983) ("[a] claim must be read in accordance with the precepts of English grammar"). In construing patent claims, the Court should ascribe to the words "their ordinary meaning unless it appears the inventor used them otherwise." Bell Communications Research, Inc. v. Vitalink Communications Corp., 55 F.3d 615, 620 (Fed. Cir. 1995). The Court must interpret technical terms as having "the meaning that [they] would be given by persons experienced in the field of the invention, unless it is apparent from the patent and the prosecution history that the inventor used the term[s] with a different meaning." Hoechst Celanese Corp. v. BP Chems. Ltd., 78 F.3d 1575, 1578 (Fed. Cir. 1996). In addition, words must be construed in the light of the specification, whose "description may act as a sort of dictionary, which explains the invention and may define terms used in the claims." Markman, 52 F.3d at 979; see also Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996). The last source of intrinsic evidence relevant to claim interpretation is the prosecution history of the patent. This history contains the complete record of all the proceedings before the Patent and Trademark Office, including any express representations made by the applicant regarding the scope of the claims. The Court, in its discretion, also may consider extrinsic evidence "to assist in its construction of the written document." Id. at 981. However, neither the prosecution history nor any extrinsic evidence can "enlarge, diminish, or vary" the limitation in the claims. Id. at 980.

5

The claims, specification, and file history constitute the public record of the patentee's claim, a record on which the public is entitled to rely. Competitors are entitled to review the public record, apply the established rules of claim construction, ascertain the scope of the patentee's claimed invention and, thus, design around the claimed invention. Id. at 1583. In order to further the "fair notice function of the requirement that the patentee distinctly claim the subject matter disclosed in the patent from which he can exclude others temporarily." Athletic Alternatives, Inc. v. Prince Mfg., Inc., 73 F.3d 1573, 1581 (Fed. Cir. 1996).

a. Preliminary Claim Construction

The Court has received only a portion of the file history. Nevertheless, for purposes of the preliminary injunction only, the Court will undertake a preliminary claim construction.

Consistent with the Court's best understanding of the dispute, defendants maintains that their product does not infringe the '975 patent because the accused product is not "rigid."[2]

Plaintiff asserts that the prosecution history demonstrates that the patent examiner added the "rigid" limitation to overcome prior art, i.e, the King patent, which was for a flexible cloth tent that required stakes to remain upright. Plaintiff therefore contends that the claim limitation requiring "rigid" material means nothing more than material that will not collapse without support members. In response, defendants contend that, based on the claims contained in the '975 patent, the ordinary meaning of the words "rigid" and "flexible" and the prior art as well, "rigid" refers to non-pliable

---

[2]It appears both parties agree that all of the remaining elements of the claims are presented in defendants' invention.

materials that are "incapable of accommodating variations in the sizes of attic openings," not simply self-supporting materials. (See Defendants Response, p. 13-15).

Based on the record presented, the Court finds that plaintiff has not offered sufficiently strong evidence that its limitation should be read into the claim in light of the specification, the prosecution history, and customary usage in the field of the invention. See Toro Co. v. White Consol. Indus., Inc., 199 F.3d 1295, 1299 (Fed. Cir. 1999).

### b. Infringement Analysis

In the instant case, the issue of infringement collapses into an issue of claim construction. The defendants contend that because their product is pliable, its walls are flexible, and not rigid. Defendants assert that their product necessary must be flexible due to manner in which it is installed into an attic access opening. The installer is required to push the flexible walls "outward towards the framework where a pre-applied silicone caulking adheres the walls in place." (Defendants' Response, at 14) The defendants assert that "flexible" walls allow their product to accommodate variations in the size and trueness of the openings, regardless if the opening is a bit smaller, larger, or not square. In contrast, such products as the plaintiff's, which have "rigid" walls, are purposely constructed to be larger than the opening in order to be mounted on top of the framework and, thus, "obviate the problem of mismatched sizes between the product and opening." Id. Defendants further argue that it is clear that mounting a rigid-walled product to the inside of the framework "would be impractical since 1) if the opening was too large a sizable gap would exist around the product, allowing heat loss or requiring additional time and effort to plug the gap, and 2) if the opening was too small, or not squared, the product would not fit within the opening." Id.

Plaintiff responds by arguing that defendant's product contains elements identical to each claimed element of the '975 patent. In particular, because the defendants' product is self-supporting, the "rigid" limitation required by plaintiff's patent is met. However, having concluded that neither the specification nor the language of the claim itself define rigid as necessitating material that is free-standing, the Court finds that plaintiff has not carried its burden of demonstrating infringement and therefore has failed to carry that burden at the preliminary injunction stage.

2. Validity

A duly issued patent is presumed valid and any challenger bears the burden of proving otherwise by clear and convincing evidence. 35 U.S.C. § 282. However, the Court need not decide these issues in this ruling because it finds that plaintiff has failed to demonstrate a reasonable likelihood of success on infringement.

## B. Irreparable Injury

The second factor the Court must consider in determining whether to grant injunctive relief is the extent to which plaintiff will suffer irreparable injury if such relief is denied. Since plaintiff did not make a clear showing of infringement, it is not entitled to a rebuttable presumption that it will be irreparably harmed if an injunction does not issue, and therefore bears the burden of proving irreparable harm. This is particularly so given the presence of non-infringing alternatives in the market.

The Court recognizes that plaintiff might suffer some adverse consequences if defendants are allowed to continue its sale of their product. For instance, plaintiff might experience some loss in sales of its invention, as well as loss in market share. In addition, it may experience some degree of damage to its reputation as a technology innovator providing its customers with unique products

protected by a patent. However, the Court finds that plaintiff's concerns, that monetary damages will not adequately compensate plaintiff, are not clearly supported by the evidence to warrant a finding of irreparable harm. To a large extent, such economic harms or losses that plaintiff may suffer if defendants' product is allowed to remain in competition against it are readily compensable in money damages.

## C. Balance of Harms and Public Policy

Plaintiff has failed to establish either likelihood of success on the merits or irreparable harm, therefore the Court need not make a finding with respect to the remaining two factors in the injunctive relief analysis: balance of the hardships and public interest. See Polymer Tech., Inc. v. Bridwell, H.A., 103 F.3d 970, 973-74 (Fed. Cir. 1994); Reebok Int'l Ltd. v. J. Baker, Inc., 32 F.3d 1552, 1556 (Fed. Cir. 1994).

## CONCLUSION

For the reasons discussed, the Court concludes that Plaintiff has failed to establish either of the first two factors deemed relevant to a preliminary injunction analysis. Accordingly, its motion for a preliminary injunction will be denied.

**THEREFORE, IT IS HEREBY ORDERED** that plaintiff's motion for a preliminary injunction is **DENIED**.

Signed: March 28, 2006

Robert J. Conrad, Jr.
United States District Judge