# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:06CV66-W

| | |
|---|---|
| THE ATTIC TENT, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **MEMORANDUM AND ORDER** |
| ) | |
| JERRY L. COPELAND and PROGRESSIVE ) | |
| ENERGY SOLUTIONS, INC., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**THIS MATTER** is before the Court on the following motions, as well as the supporting and opposing memoranda related to those motions:

1. The "Plaintiff's Motion to Strike" (document #34) filed May 30, 2006;

2. "Plaintiff's First Motion to Compel Discovery ..." (document #36) filed June 5, 2006;

3. "Defendants' Motion to Recuse Plaintiff's Attorney Jason Miller ..." (document #43) filed June 26, 2006;

4. "Plaintiff's Motion to Disqualify Defendants' Counsel Gregory Everman and Defendants' Expert Witness Christopher Dremann" (document #49) filed June 29, 2006;

5. "Plaintiff's Second Motion to Compel ..." (document #54) filed July 7, 2006; and

6. "Defendants' Motion for Extension of ... Discovery Deadlines" (document #63) filed July 13, 2006.

This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and these Motions are now ripe for disposition.

Having carefully considered the parties' arguments, the record, and the applicable authority, the undersigned will <u>deny</u> the Plaintiff's "Motion to Strike," <u>deny as moot</u> "Plaintiff's First Motion to Compel," <u>grant in part</u> and <u>deny in part</u> "Plaintiff's Second Motion to Compel" and "Motion to

Disqualify Defendants' Counsel Gregory Everman and Defendants' Expert Witness Christopher Dremann," and grant "Defendants' Motion to Recuse Plaintiff's Attorney Jason Miller" and "Motion for Extension of Discovery Deadlines," each for the reasons addressed below.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This is a patent infringement action in which the Plaintiff, The Attic Tent, Inc., contends that the Defendants, Jerry L. Copeland and his closely-held corporation, Progressive Energy Solutions, Inc., are manufacturing, selling or offering to sell products that infringe the Plaintiff's patent in an "Attic Hatchway Cover." According to the Complaint, the Attic Hatchway Cover is a "tentlike" insulating structure attached to the frame of a building's interior attic hatchway that can be opened to allow access into the attic, but otherwise is left closed to minimize heat loss.

Relevant to the subject Motions, on October 9, 1997, the Plaintiff retained the law firm Dougherty & Dremann, predecessor to the Plaintiff's present counsel, Dougherty Clements ("the Dougherty firm"), to obtain a "reissue patent" in the Attic Hatchway Cover. At that time, Christopher Dremann was one of two "name partners" in the firm.[1]

On January 7, 1998, Dougherty & Dremann filed the Plaintiff's reissue application with the United States Patent and Trademark Office ("USPTO"). Although there is no indication in the record that Mr. Dremann performed work on, or was otherwise privy to confidential information concerning the reissue application, he was listed, along with the firm's other North Carolina-licensed attorneys, on a "Power of Attorney" submitted to the USPTO that identified attorneys authorized to act on the Plaintiff's behalf concerning the application. Moreover, as a partner, Mr. Dremann received some net pecuniary benefit from his firm's work for the Plaintiff as he would have from fees paid by any of the

---

[1] The lawyers and law firms discussed in this opinion are located in Charlotte, North Carolina, although as discussed below, Mr. Dremann apparently is no longer engaged in the private practice of law.

2

firm's clients.

On October 8, 1998, Mr. Dremann left the Dougherty firm and sometime later became employed by Corning Cable Systems.

On September 18, 2000, the Defendants' present counsel, Gregory R. Everman, joined the Dougherty firm as an associate. In its briefs, the Plaintiff concedes that other than information they allege he might have later acquired from Mr. Dremann, discussed below, Mr. Everman performed no work related to and never had any knowledge concerning the Plaintiff's reissue application.

On December 5, 2000, the USPTO issued the Plaintiff Patent Number RE 36,975 ("the patent") in the Attic Hatchway Cover.

On February 1, 2001 and July 1, 2002, respectively, Jason S. Miller and Jeff Bernard joined the Dougherty firm.

On June 30, 2003, Mssrs. Everman, Miller and Bernard left the Dougherty firm and sometime thereafter formed Everman Miller & Bernard, PLLC.

Sometime later, Mr. Everman left Everman Miller & Bernard and became a solo practitioner. Mr. Miller and Mr. Bernard continued practicing together for some period of time, although Mr. Bernard is now employed at Corning Cable Systems, where, the Plaintiff alleges, he is supervised by Mr. Dremann.

Sometime in late 2005 or early January 2006, the Plaintiff came to believe that a product the Defendants were selling infringed their patent. At the Plaintiff's request, sometime in January 2006, Plaintiff's counsel, Russell M. Racine, a member of the Dougherty firm, sent the Defendants what is known in the intellectual property arena as a "cease and desist letter," that is, a demand that the Defendants discontinue production and sale of the allegedly infringing product.

After receiving Mr. Racine's letter, Defendant Copeland sought to retain counsel and initially

3

contacted Mr. Miller, who admits that he spoke with the Defendant telephonically sometime in January 2006, and that the conversation was sufficiently detailed that he recorded the Plaintiff's Patent Number. Mr. Miller concedes that Mr. Copeland expressed a concern that he did not have the financial resources to engage in protracted litigation, and Mr. Copeland avers that he and Mr. Miller also discussed other confidential information (which was submitted to the undersigned for <u>in camera</u> review) related to his product's design and construction.

The conversation ended with Mr. Miller informing Mr. Copeland of his (Mr. Miller's) potential conflict of interest due to his then-former employment with the Dougherty firm, but nevertheless offering to schedule a conference with Mr. Copeland. Mr. Miller avers that when Mr. Copeland declined to schedule a conference after being advised of the potential conflict, he referred Mr. Copeland to Mr. Everman, a contention that the Defendants dispute.

Ultimately, however, the Defendants <u>did</u> retain Mr. Everman, who in addition to representing the Defendants in the subject litigation, at some point filed a patent application on behalf of the Defendants' competing, allegedly-infringing product.

On February 16, 2006, the Plaintiff filed its Complaint alleging that the Defendants are manufacturing, selling or offering to sell products that infringe the patent and that the infringement is willful.

On March 10, 2006, the Defendants filed their "Answer and Counterclaim," including a "Third Counterclaim" for unfair and deceptive trade practices and 14 "Defenses," among them: "Second Defense (Statutorily Invalid and/or Void)," "Fifth Defense (Invalidity for Fraud, Inequitable Conduct and/or Breach of Duty)," "Sixth Defense [First Instance] (Invalidity for Failure to Disclose)," "Sixth Defense [Second Instance] (Invalidity for Deceptive Intent),"[2] and "Eleventh Defense (Plaintiff Not a

---

[2] The Defendants' Affirmative Defenses are misnumbered, that is, there are two "Sixth Defense(s)."

Party in Interest)." The Defendants did not, however, assert reliance on opinion of counsel as a defense to the Plaintiff's willful infringement claim.

On March 29, 2006, the Plaintiff served its Interrogatories, Requests for Production of Documents, and Requests for Admissions.

On May 3, 2006, the Defendants served their responses to the Plaintiff's discovery requests. Relevant to the subject Motions, the Defendants conceded that they then had no information and possessed no documents supporting their Third Counterclaim and the Affirmative Defenses noted above, but also stated, as they do in their present briefs, that discovery is not yet complete and that they may be able to develop supporting facts during that process. On May 30, 2006, the Plaintiff moved to strike the Defendants' Third Counterclaim and those Defenses, contending that the Defendants have no evidence to support them.

The Plaintiff also determined that the Defendants' responses to several other of their Requests for Production of Documents were incomplete, and on June 5, 2006, filed its "First Motion to Compel" supplemental responses. However, the Plaintiff concedes that the Defendants subsequently served sufficient responses concerning those requests and, accordingly, their First Motion to Compel will be <u>denied as moot</u>.

On June 19, 2006, Mr. Miller rejoined the Dougherty firm, this time as a partner, and on June 22, Christopher L. Bernard, also a Dougherty partner (and brother of Jeff Bernard), informed Mr. Everman telephonically that Mr. Miller would also be representing the Plaintiff in this action. The same day, Mr. Miller filed a "Notice of Appearance" in this case.

On June 26, 2006, the Defendants filed their "Motion to Recuse" Mr. Miller. The Plaintiff credibly informs the Court that following receipt and pending resolution of the Defendants' Motion, Mr. Racine and Christopher Bernard have screened Mr. Miller from any further involvement in this

matter.

In an email dated June 27, 2006, Mr. Everman informed Mr. Racine that the Defendants intended to hire Mr. Dremann as an expert witness in this case.

On June 29, 2006, the Plaintiff filed its "Motion to Disqualify" Mr. Dremann and Mr. Everman, contending that Mr. Dremann could have acquired confidential information concerning the Plaintiff's patent during his tenure as a partner at the Dougherty firm, and, more recently, could have relayed the same information to Mr. Everman.

On July 7, 2006, the Plaintiff filed its "Second Motion to Compel" supplemental responses to discovery requests not within the scope of its first discovery motion, and which as briefed addresses whether the Defendants should be required to produce a claim chart; legal opinions, if any, they obtained on the issue of infringement; and its patent application.[3] The parties' briefs and the record reveal that the Defendants have not obtained a legal opinion on the issue of infringement, and that although they have not produced the patent applications that they filed for their product, the Defendants have produced a sample of that product to the Plaintiff.

On July 13, 2006, the Defendants filed their "Motion for Extension of Discovery Deadlines," to which the Plaintiff consents as long as any "extensions of time apply to Plaintiff's deadlines as well." Accordingly, the Defendants' Motion will be <u>granted</u> and the pretrial deadlines extended, as <u>ordered</u> below.

The parties' remaining Motions have been fully briefed and are, therefore, also ripe for determination.

---

[3]Initially, the Plaintiff's Second Motion to Compel also addressed the Defendants' privilege log, which has now been produced.

## II. DISCUSSION OF CLAIMS

**A. Plaintiff's Motion to Strike**

Federal Rule of Civil Procedure 12(f) provides that "[u]pon motion made by a party ... the court may order stricken from any pleading, any insufficient defense." See also Waste Mgmt. Holdings, Inc. v. Gilmore, 252 F.3d 316, 348 (4th Cir. 2001) ("defense that might confuse the issues in the case and would not ... constitute a valid defense to the action can and should be deleted"), citing 5C Fed. Prac. & Proc. Civ. 3d §1381, Wright & Miller; and Akeva L.L.C. v. Mizuno Corp., 199 F.Supp.2d 336, 337, n.2 (M.D.N.C. 2002) (motion to strike may be granted as to defenses that are "insufficient ... redundant, immaterial, impertinent, or scandalous").

"The purpose of a Rule 12(f) motion to strike is to avoid the waste of time and money that arises from litigating unnecessary issues." Simaan, Inc. v. BP Products North America, Inc., 395 F.Supp.2d 271, 278 (M.D.N.C. 2005), citing Buser v. Southern Food Serv., Inc., 73 F.Supp.2d 556, 559 (M.D.N.C. 1999). Accord Federal Deposit Ins. Corp. v. British-American Corp., 744 F. Supp.116 (E.D.N.C. 1990).

The Defendants have not cited, however, nor is the undersigned is aware of, any authority challenging the legal sufficiency of the Defendants' counterclaim for unfair and deceptive trade practices or any of their affirmative defenses. To the contrary, although entitled a Motion to Strike, the Plaintiff's Motion is, in fact, in the nature of a motion for summary judgment premised on the alleged insufficiency of the Defendants' evidence, and therefore a motion it would be inappropriate to file or address prior to the conclusion of discovery. Accord Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986) (summary judgment should be denied, or resolution of the motion continued, if there has been an inadequate time for discovery); Evans v. Technologies Applications and Serv. Co., 80 F.3d 954, 961

(4th Cir. 1996) (same); and Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390, 394 (4th Cir. 1994) (same).

Although recognizing that the Plaintiff may ultimately prevail on this point, that is, that the Defendants may not be able to marshal sufficient evidence to raise an issue of material fact as to their Third Counterclaim and the subject Affirmative Defenses, such a determination is premature at this point in the proceedings. Accordingly, the undersigned will deny the Plaintiff's Motion to Strike without prejudice to the Plaintiff's right to challenge the sufficiency of the Defendants' evidence at the close of discovery.

### B. Plaintiff's Second Motion to Compel

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

The rules of discovery are to be accorded broad and liberal construction. See Herbert v. Lando, 441 U.S. 153, 177 (1979); and Hickman v. Taylor, 329 U.S. 495, 507 (1947). However, a litigant is not entitled to conduct discovery that is intended to harass, annoy, embarrass, or oppress the opposing party. See Fed. R. Civ. P. 26(c).

Whether to grant or deny a motion to compel is generally left within the district court's broad discretion. See, e.g., Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 929 (4th Cir. 1995) (district courts' rulings on discovery motions reviewed on appeal for abuse of discretion); Erdmann v. Preferred Research Inc., 852 F.2d 788, 792 (4th Cir. 1988) (noting district court's

substantial discretion in resolving motions to compel); and LaRouche v. National Broadcasting Co., 780 F.2d 1134, 1139 (4th Cir. 1986) (same).

As the parties agree, in the context of intellectual property litigation, a "claim chart" is a "patent-claim-element" comparison of the subject patent and the allegedly-infringing product, and in the case of the Defendants, would demonstrate point by point their contentions that their product does not infringe the Plaintiff's patent. Such a chart could reasonably lead to the discovery of admissible evidence, and therefore, the Plaintiff's Second Motion to Compel will be granted as to the Defendants' claim chart.

It is well settled, however, that a party may be compelled to produce opinions of its litigation or outside counsel concerning the issue of infringement only to the extent that the party has asserted those opinions as a defense to a claim that any such infringement was willful. See, e.g., Quantum Corp. v. Tandon Corp., 940 F.2d 642, 643-44 (Fed. Cir. 1991) ("an accused infringer ... must choose between the lawful assertion of the attorney-client privilege and avoidance of a willfulness finding if infringement is found"); Aspex Eyewear, Inc. v. E'lite Optik, Inc., 276 F. Supp.2d 1084, 1092-93 (D.Nev. 2003) (accused infringer "having waived the privilege by asserting the advice of counsel defense, must produce ... all documents relied upon or considered by counsel in rendering the opinions relied upon"); and Greene Tweed of Delaware, Inc. v. DuPont Dow Elastomers, L.L.C., 202 F.R.D. 418, 420-22 (E.D.Pa. 2001) (where a party asserts the advice of counsel defense, work product immunity, like attorney-client privilege, is waived with respect to the subject of the advice). In this case, the Defendants represent that they never obtained such an opinion and have not asserted an advice of counsel defense. Accordingly, the Plaintiff's Second Motion to Compel will be denied in this regard.

Similarly, an accused infringer will be required to produce its application for a patent in the allegedly-infringing product only if a "heightened relevancy standard is met." In re Columbia Univ. Patent Litig., 330 F. Supp. 2d 18, 20 (D. Mass. 2004) (absent a showing of "direct relevancy" that "tips

the scales" in favor of disclosure, patent applications are confidential and their disclosure will not be compelled). In other words, if a "plaintiff [in a patent infringement action] can obtain sufficient information regarding [the accused product] from other sources, discovery of the defendant's patent application generally will be denied." Id. Accord Ideal Toy Corp. v. Tyco Industries, Inc., 478 F. Supp. 1191, 1192-93 (D. Del. 1979) (patent application not discoverable); and Cleo Wrap Corp. v. Elsner Engineering Works, Inc., 59 F.R.D. 386, 388 (M. D. Pa. 1972) (same).

Applying these principles, the undersigned concludes that the Plaintiff may not compel production of the Defendants' patent application. Where the Defendants have produced a sample of the actual product and also will produce their claim chart detailing their analysis of why their product allegedly does not infringe the Plaintiff's patent, the Defendants' interest in otherwise preserving the confidentiality of their application outweighs any additional benefit that the Plaintiff might derive from production. Accord In re Columbia Univ. Patent Litig., 330 F. Supp. 2d at 20; Ideal Toy Corp., 478 F. Supp. at 1192-93; and Cleo Wrap Corp., 59 F.R.D. at 388. Therefore, the Plaintiff's Second Motion to Compel will also be denied as to the Defendants' patent application.

### C. Defendants' Motion to Recuse Jason Miller

A motion to disqualify an attorney is addressed to the discretion of the district court in applying the appropriate rules of Professional Conduct. Plant Genetic Systems v. CIBA Seeds, 933 F. Supp. 514, 518 (M.D.N.C. 1996). However, "[even] in a close case the trial court should not engage in hair-splitting niceties but instead resolve all doubts in favor of disqualification." Id. at 517, citing United States v. Clarkson, 567 F.2d 270, 273 (4th Cir. 1977) ("[i]n determining whether to disqualify counsel for conflict of interest, the trial court is not to weigh the circumstances with hair-splitting nicety but, in the proper exercise of its supervisory power over the members of the bar and with a view of preventing the appearance of impropriety, it is to resolve all doubts in favor of disqualification") (emphasis added);

and Rogers v. Pittston Co., 800 F. Supp. 350, 353 (W.D. Va. 1992).

Rule 1.18 of the Revised Rules of Professional Conduct of the North Carolina State Bar ("RRPC") defines the ethical obligation that a lawyer has to prospective clients, as follows:

> (a) A person who discusses with a lawyer the possibility of forming a client-lawyer relationship ... is a prospective client.
>
> (b) Even when no client-lawyer relationship ensues, a lawyer who has had discussions with a prospective client shall not use or reveal information learned in the consultation...
>
> (c) A lawyer subject to paragraph (b) shall not represent a client with an interest adverse to those of a prospective client in the same or substantially related matter if the lawyer received information from that prospective client that could be significantly harmful to that person in the matter.

"Paragraph (b) prohibits the lawyer from using or revealing information ... even if the [prospective] client or lawyer decides not to proceed with the representation ... the duty exists regardless of how brief the initial conference may be." RRPC 1.18 at Comment 1. The lawyer has the burden of limiting the initial interview to avoid acquiring disqualifying information. Id. at Comment 4.

Applying these principle to the facts in this case, Mr. Miller may not now represent the Plaintiff concerning the same matter he earlier discussed with Defendant Copeland. Indeed, Mr. Miller concedes that he and Mr. Copeland discussed the Defendants' financial condition. Moreover, the fact that Mr. Miller recorded the Plaintiff's patent number supports Mr. Copeland's contention that he also discussed with Mr. Miller confidential information concerning the design and construction of the accused product that is now central to the pending litigation.

In short, having acquired confidential information from the Defendants concerning the Plaintiff's allegations of patent infringement, it would at least create an "appearance of impropriety" to allow him to prosecute those same allegations. Accordingly, the Defendants' Motion to Recuse Mr. Miller will be granted.

### D. Plaintiff's Motion to Disqualify Mr. Dremann and Mr. Everman

As discussed above, doubts concerning disqualification of counsel are properly resolved in favor of disqualification. Accord Clarkson, 567 F.2d at 273 ("[i]n determining whether to disqualify counsel for conflict of interest, the trial court is not to weigh the circumstances with hair-splitting nicety but, in the proper exercise of its supervisory power over the members of the bar and with a view of preventing the appearance of impropriety, it is to resolve all doubts in favor of disqualification"); and Plant Genetic Systems, 933 F. Supp. at 518 ( "in a close case the trial court should not engage in hair-splitting niceties but instead resolve all doubts in favor of disqualification").

Rule 1.9(a) of the RRPC states in pertinent part (emphasis added):

a lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interest are materially adverse to the interest of the former client unless the former client gives informed consent, confirmed in writing.

"Rule 1.9(a) prohibits representation of an adverse client in a matter that is the same, or substantially related to, that of a former client." RRPC 1.9 at Comment 1. "The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question." Id. at Comment 2.

Applying these principles to the record, Mr. Dremann may not become, in essence, a member of the Defendants' legal team in an effort to challenge the patent that his former law firm – in which he was a "name partner" – initially obtained. Although, as discussed above and below, there is no evidence that Mr. Dremann actually worked on the Plaintiff's patent application or acquired confidential information relating to it, as a then-partner in Dougherty Dremann, his name appears on the patent application and other supporting documents. Moreover, as previously noted, he personally benefitted from legal fees paid to his firm by the Plaintiff.

In light of those undisputed facts, Mr. Dremann now attacking the very same patent, even if only

12

to give testimony as to the parameters or outer limits of the products covered by the patent, has at least the appearance of "changing sides," a practice clearly prohibited by the Rules of Professional Conduct. Therefore, in order to avoid the appearance of a conflict of interest, the Court will also exclude Mr. Dremann from further involvement in this matter.

Concerning Mr. Everman, however, and as the Plaintiff has conceded, there is no similar appearance of conflict. As noted above, Mr. Everman joined the Dougherty firm only after the Plaintiff's patent application was filed with the USPTO, and he never performed work on, derived any pecuniary benefit from, or acquired confidential information about that matter during his tenure with that firm.

Instead, Mr. Everman has a conflict, if at all, only secondarily to Mr. Dremann, and only to the extent that Mr. Dremann relayed the Plaintiff's confidential information to him, a fact that both Mr. Dremann and Mr. Everman deny. Moreover, although Plaintiff's counsel is the custodian of both the Plaintiff's patent application file and Mr. Dremann's billing records for that period of time, the Plaintiff is unable to show that Mr. Dremann performed work on or otherwise acquired any confidential information about that matter or the Plaintiff's business generally.

In short, speculation based on what the Plaintiff contends "may," "could," or "might possibly" have happened is insufficient to create even the type of "close case" that would call for Mr. Everman's disqualification. Accordingly, the Plaintiff's Motion to Disqualify will be <u>granted</u> as to Mr. Dremann but <u>denied</u> as to Mr. Everman.

### III. <u>ORDER</u>

**NOW, THEREFORE, IT IS ORDERED:**

1. The "Plaintiff's Motion to Strike" (document #34) is **DENIED WITHOUT PREJUDICE** to the Plaintiff's right to raise these and any other issues through a Motion for Summary Judgment

13

following the conclusion of discovery.

2. The "Plaintiff's First Motion to Compel Discovery" (document #36) is **DENIED AS MOOT**.

3. The "Plaintiff's Second Motion to Compel ..." (document #54) is **GRANTED IN PART** and **DENIED IN PART**, that is, <u>on or before September 15, 2006, the Defendants shall produce their claim chart</u>. The Plaintiff's Second Motion to Compel is **DENIED** in all other respects.

4. The "Defendants' Motion to Recuse Plaintiff's Attorney Jason Miller ..." (document #43) is **GRANTED**, that is, Mr. Miller shall have no further involvement of any kind in this matter. The Plaintiff, Mr. Miller, and all other attorneys and staff in the law firm Dougherty Clements are **ORDERED** to completely screen Mr. Miller from this action. Additionally, Mr. Miller and Dougherty Clements shall not receive or retain any attorneys' fees or other payments resulting from Mr. Miller's brief representation of the Plaintiff in this matter and shall return to the Plaintiff any such fees or payments previously received.

5. "Plaintiff's Motion to Disqualify Defendants' Counsel Gregory Everman and Defendants' Expert Witness Christopher Dremann" is **GRANTED** as to Mr. Dremann but **DENIED** as to Mr. Everman. Mr. Dremann shall have no further contact with the Defendants, Mr. Everman, or other defense experts concerning this action. Moreover, Mr. Dremann shall not receive or retain any expert witness fees or other payments resulting from his brief retention by the Defendants in this matter and shall return to the Defendants any such fees or payments previously received.

6. The "Defendants' Motion for Extension of ... Discovery Deadlines" (document #63) is **GRANTED**, specifically:

a. The Plaintiff's expert disclosure deadline (including service of expert reports) is extended to September 30, 2006.

b. The Defendants' expert disclosure deadline (including service of expert reports) is extended

to October 31, 2006.

    c. The discovery deadline is extended to November 30, 2006.

    d. The dispositive motions deadline is extended to January 15, 2007.

7. <u>In the event that either party appeals this Memorandum and Order to the District Judge to whom this case is assigned (the Honorable Frank D. Whitney), all rulings contained herein, including the exclusion of Mr. Miller and Mr. Dremann, shall remain in force and the parties, their counsel, Mr. Miller, and Mr. Dremann shall abide by them until such time as those rulings are affirmed or vacated.</u>

8. The parties and their counsel are advised that, should an appeal be taken from this Memorandum and Order, whether to conduct a hearing – and, if so, the timing of such a hearing – will be determined by Judge Whitney.

9. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties; <u>and to the Honorable Frank D. Whitney</u>.

**SO ORDERED.**

Signed: August 14, 2006

_____
Carl Horn, III
United States Magistrate Judge