**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**3:06CV66-W**

| | |
|---|---|
| THE ATTIC TENT, INC., )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>JERRY L. COPELAND and PROGRESSIVE )<br>ENERGY SOLUTIONS, INC., )<br>)<br>Defendants. )<br>_____ ) | **MEMORANDUM AND ORDER** |

**THIS MATTER** is before the Court on the following motions, as well as the supporting and opposing memoranda related to those motions:

1. The "Defendants' Motion to Partially Withdrawal [sic] and Amend ... Response to ... Requests for Admissions" (document #79) filed October 6, 2006;

2. "Plaintiff's Renewed Motion to Compel the Production of Defendants' Patent Applications ..." (document #82) filed October 30, 2006;

3. "Plaintiff's Motion to Strike Errata Sheets of Defendant Jerry Copeland and Witness Linda Copeland" (document #86) filed November 1, 2006;

4. "Defendants' Motion for Extension of Time to Serve Defendants' Expert Witness Report" (document #91) filed November 14, 2006;

6. "Plaintiff's Motion for Protective Order and to Quash ... Subpoenas ... " (document #96) filed November 27, 2006;

7. "Defendants' Motion to Compel Depositions ..." (document #98) filed December 15, 2006; and

8. "Defendants' Motion for Extension of Dispositive Motions Deadline" (document #104)

filed January 15, 2007.

Plaintiff's counsel has informed chambers' staff telephonically that the Plaintiff consents to the Defendants' Motion to Extend the dispositive motions deadline, and the time for filing any further responsive briefs has expired.

This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and these Motions are now ripe for disposition.

Having carefully considered the parties' arguments, the record, and the applicable authority, the undersigned will <u>deny</u> the "Defendants' Motion to Partially Withdrawal [sic] and Amend ... Response to ... Requests for Admissions" (document #79) and the "Plaintiff's Renewed Motion to Compel the Production of Defendant's Patent Applications ..." (document #82); will <u>grant</u> "Plaintiff's Motion to Strike Errata Sheets of Defendant Jerry Copeland and Witness Linda Copeland" (document #86) and "Defendants' Motion for Extension of Time to Serve Defendants' Expert Witness Report" (document #91) and "Motion for Extension of Dispositive Motions Deadline" (document #104); and will <u>grant in part</u> and <u>deny in part</u> "Plaintiff's Motion for Protective Order and to Quash ... Subpoenas ... " (document #96) and "Defendant's Motion to Compel Depositions ..." (document #98), each for the reasons addressed below.

## I. <u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>

This is a patent infringement action in which the Plaintiff, The Attic Tent, Inc., contends that the Defendants, Jerry L. Copeland and his closely-held corporation, Progressive Energy Solutions, Inc., are manufacturing, selling or offering to sell a product ("the Energy Shield") that infringes the Plaintiff's patent in an "Attic Hatchway Cover." According to the Complaint, the Attic Hatchway Cover is a "tentlike" insulating structure attached to the frame of a building's interior attic hatchway that can be

opened to allow access into the attic, but otherwise is left closed to minimize heat loss.

For a more complete factual and procedural history, see "Memorandum and Order" at 2-6, filed August 14, 2006 (document #74) (denying Plaintiff's "Motion to Strike" and "First Motion to Compel," granting in part and denying in part Plaintiff's "Second Motion to Compel," granting Defendant's "Motion to Recuse Plaintiff's Attorney Jason Miller," granting in part and denying in part Plaintiff's "Motion to Disqualify Defendants' Counsel Gregory Everman and Defendant's Expert Christopher Dremann," and extending pretrial deadlines).

Relevant to the subject Motions, on February 16, 2006, the Plaintiff filed its Complaint alleging that the Defendants are manufacturing, selling or offering to sell products that infringe the patent and that the infringement is willful.

On March 29, 2006, the Plaintiff served its Interrogatories, Requests for Production of Documents, and Requests for Admissions. Relevant to the subject Motions, Requests for Admissions No.'s Three, Six, and Nine asked the Defendants to admit or deny the following facts:

> 3. Defendants' Energy Shield product has a first side wall, a second side wall, a front wall, and a rear wall...
>
> 6. Defendants' Energy Shield product has a top wall with a zipper member...
>
> 9. Defendants did not start making, having made, and/or selling the Energy Shield product until after Defendants became aware of or obtained Plaintiff's Attic Tent product....

On May 3, 2006, the Defendants served their responses to the Plaintiff's discovery requests, and in response to the Plaintiff's Requests for Admissions, the Defendants, who were then as they are now advised by their present counsel, Gregory R. Everman, "admitted" the truth of each of the above-quoted requests. The Defendants refused, however, to produce certain documents, including their patent applications for the Energy Shield and their claim chart.

On June 5 and July 7, 2006, respectively, the Plaintiff filed its First and Second Motions to Compel. The Defendants subsequently served sufficient responses to the discovery addressed in the Plaintiff's First Motion to Compel, but continued to object to producing the patent applications and claim chart, which were the subject of the Second Motion to Compel.

On June 26, 2006, the Defendants filed their "Motion to Recuse" Jason S. Miller, the law partner of present Plaintiff's counsel Christopher L. Bernard and Russell M. Racine, on the grounds that prior to joining Mssrs Bernard's and Racine's law firm (Dougherty Clements), Mr. Miller had a preliminary discussion with Defendant Copeland concerning whether Mr. Miller might represent <u>the Defendants</u> in this action.

On June 27, 2006, the parties submitted and the Court entered a "Stipulated Protective Order," which in relevant part permits either party to designate information and/or documents produced in discovery as "Confidential" and/or "Confidential-Attorney Eyes Only," the chief difference between the two designations being that the latter prohibits even the party from receiving or reviewing the information. <u>See</u> Document #48 at 2-3. The Protective Order also provides that prior to disclosing either Confidential or Confidential-Attorney Eyes Only information to "outside counsel," outside counsel's staff, or an expert/consultant, the disclosing counsel must first give a copy of the Protective Order to that person who then must sign the "Confidentiality Agreement" which is attached as Exhibit A to the Protective Order and in which the individual agrees to be bound by the Protective Order. Prior to making the disclosure to a potential expert/consultant, the disclosing counsel must also serve the signed Confidentiality Agreement on opposing counsel, who would then have ten days to object to the disclosure.

On June 29, 2006, the Plaintiff filed its "Motion to Disqualify" Mr. Everman and the Defendants' prospective expert witness, Christopher Dremann, contending that Mr. Dremann could have acquired

4

confidential information concerning the Plaintiff's patent during his tenure years earlier as a partner at the Dougherty firm, and, more recently, could have relayed the same information to Mr. Everman. In its Motion, the Plaintiff stated that based on comments Mr. Everman had allegedly made earlier, Plaintiff's counsel believed that Mr. Dremann was acting as de facto co-defense counsel. In response, the Defendants denied that Mr. Dremann or any other attorney was acting as co-defense counsel, formally or informally.

As noted above, on August 14, 2006, the undersigned entered a "Memorandum and Order" granting the Defendants' Motion to Recuse Mr. Miller, and granting the Plaintiff's Motion to Disqualify as to Mr. Dremann but denying it as to Mr. Everman, and requiring Mr. Miller and Mr. Dremann to disgorge any fees they had been paid by their respective clients. See Document #74 at 13-14. Contrary to the Plaintiff's present assertions, however, the basis for Mr. Dremann's exclusion was not his alleged status as co-counsel, but that "Mr. Dremann now attacking the very same patent [that his former law firm once prosecuted], even if only to give testimony as to the parameters or outer limits of the products covered by the patent, has at least the appearance of "changing sides," a practice clearly prohibited by the Rules of Professional Conduct." Id. at 12-13.

In the same Order, the Court denied as moot the Plaintiff's First Motion to Compel, and granted in part and denied in part the Plaintiff's Second Motion to Compel, requiring the Defendants to produce their claims chart, but denying the Motion in all other respects, including as to the Defendants' patent applications. Id. at 10 ("Where the Defendants have produced a sample of the actual product and also will produce their claims chart detailing their analysis of why their product allegedly does not infringe the Plaintiff's patent, the Defendants' interest in otherwise preserving the confidentiality of their application outweighs any additional benefit that the Plaintiff might derive from production") (emphasis in original).

5

Finally, in the August 14 Memorandum and Order, the pretrial deadlines were extended; specifically, the Plaintiff's expert disclosure deadline was extended to September 30, 2006, the Defendants' expert disclosure deadline was extended to October 31, 2006, the discovery deadline was extended to November 30, 2006, and the dispositive motions deadline was extended to January 15, 2007.

On September 20, 2006, the Plaintiff deposed Linda Copeland, Defendant Copeland's wife, who is or has served as the corporate Defendant's Vice-President, Business Manager, and Chief Financial Officer. During her deposition, Mrs. Copeland was questioned concerning the Energy Shield's design and testified consistently with the Defendants' admissions in response to Requests for Admissions No.'s Three and Six as follows:

> [Q] And then we can agree that there's a top piece here that also connects the sides and the front and back together?
> [A] Right.
>
> [Q] And then it looks to me as though there's a zipper piece here that travels along the top, down the front and along your side?
> [A] Correct.
>
> [Q] Okay. Now as we've also discussed there's a top piece here, isn't that right?
> [A] Yes.
>
> [Q] And it's connected to the front wall here?
> [A] Yes.
>
> [Q] The top part and what we've called the front? Before we referred to this as the front and the back, isn't that right?
> [A] That's -- that'-- the top comes down to the front, yes.
>
> [Q] Okay, and it's connected to the front?
> [A] Yes.

Plaintiff's "Supplemental Response to Defendants' Motion to Partially Withdraw and Amend ... Admissions" at 5-7 (document #81).

The Defendants represent that on September 25, 2006, the day before Defendant Copeland's deposition, Mr. Everman realized for the first time that his clients' responses to the above-quoted

Requests for Admission were "incorrect."

The next day, September 26, 2006, Mr. Everman appeared with Mr. Copeland for his deposition. Sometime immediately before, during or just after the deposition, Mr. Everman handed Plaintiff's counsel an Amended Response to the subject Requests for Admissions, this time attempting to deny them. Nevertheless, during his contemporaneous deposition, Mr. Copeland testified consistently with his original admission that he did not first manufacture his allegedly-infringing product until after he became aware of the Plaintiff's patented product, as follows:

> [Q] Let's move over to I believe it may be the fourth page, Request for Admission Number 9. It says, 'Admit Defendants did not start making, having made, and/or selling the Energy Shield product until after Defendants became aware of or obtained Plaintiff's Attic Tent Product.' What was your response?
> [A] My response was admit.
>
> [Q] And can you explain that.
> [A] Because I did not start making or selling the Energy Shield product until I became aware.
>
> [Q] And how did you become aware of the plaintiff's product?
> [A] I became aware of their patent and on December the 8th of 2005 I attended an Energy Star conference and there was a product there that looked similar to the patent.

Plaintiff's "Response to Defendants' Motion to Partially Withdraw and Amend ... Admissions" at 14 (document #80).

Also on September 26, 2006, the Plaintiff filed a Motion to extend its expert disclosure deadline, to which Mr. Everman consented through telephonic communication with chambers' staff. Accordingly, the undersigned <u>extended</u> the Plaintiff's expert deadline to the requested date, October 16, 2006, and <u>extended</u> the Defendants' deadline the same number of days to November 14, 2006.

After Plaintiff's counsel informed the Defendants that the Plaintiffs would not accept the Amended Responses to the Requests for Admissions, that is, that Defendant's would continue to treat those matters as admitted, on October 6, 2006, the Defendants filed the subject Motion to Partially

7

Withdrawal [sic] and Amend (their earlier admissions).

In its October 17, 2006 Response to the Defendants' motion to amend their admissions, the Plaintiff correctly pointed out that the original admissions were consistent with the testimony that Mr. and Mrs. Copeland had then recently given.

On October 19, 2006, the Defendants served an errata sheet, entitled "Witness Certification and Addendum of Linda Copeland," which as the Plaintiff points out in its briefs is intended primarily as a means for a deposed witness to object to and correct an inaccurate transcription of what he or she said under oath. Rather than contend that the court reporter erred in recording Mrs. Copeland's verbal responses, however, the Defendants seize on the errata sheet as an opportunity to recast her testimony. For example, where Mrs. Copeland initially testified "right," "correct," "yes," or otherwise in the affirmative to each of the deposition questions quoted above, the Defendants seek now to substitute an answer of "no" to each question.

Similarly, on October 27, 2006, the Defendants served an errata sheet on behalf of Mr. Copeland in which he seeks to change materially his testimony, for instance, withdrawing an admission that the top of his Energy Shield product is rectangular, and replacing an admission that he only did an "in house investigation" into whether his proposed product would infringe the Plaintiff's patent with the assertion that he "relied on [his] attorney's opinion that the Energy Shield did not infringe [the Plaintiff's] patent."

On October 30, 2006, the Plaintiff filed its "Renewed Motion to Compel the Production of Defendants' Patent Applications," which merely rehashes – albeit strenuously – arguments the Court has previously considered and rejected. Accordingly, for the reasons previously stated in the Court's August 14, 2006 Memorandum and Order (document #74), the Plaintiff's Renewed Motion to Compel production of the Defendants' patent applications will be <u>denied</u>.

On November 1, 2006, the Plaintiff filed its "Motion to Strike" the errata sheets submitted by Mr. and Mrs. Copeland.

On November 10, 2006, Mr. Everman contacted Plaintiff's counsel seeking mutually agreeable dates for the depositions of Steve Williams and Rick Pressley, the Plaintiff's shareholders, and Richard Tucker, the Plaintiff's expert witness.

On November 13, 2006, counsel agreed that the depositions would be taken on November 27-30, 2006, the Monday through Thursday following the Thanksgiving holiday. Later the same day, however, the Plaintiff unilaterally noticed depositions of two third-party corporate witnesses for November 28 and 29, 2006.

On November 14, 2006, the Defendants filed their Motion for Extension of Time to serve their expert witness reports, contending that until the Plaintiff produced a sample of its product and indicated the manner in which the accused product infringed the Plaintiff's product, the Defendants' experts were unable to prepare their report, and seeking an extension to serve those reports until 21 days after the Plaintiffs made production. In its Response filed on November 16, 2006, the Plaintiff indicated that it would produce a sample of its product the next day (November 17), but objected to the Defendants receiving any extension on the grounds that the Defendants had delayed unreasonably in requesting the sample. Because the Court has concluded, as discussed below, that the fault for the continuing delay of discovery in this matter lies with both parties and their respective counsel, and because such extensions are otherwise routinely allowed (indeed, the Plaintiff earlier received the same courtesy), the Defendants' Motion for Extension of Time to serve their expert reports will be <u>granted</u>.

On November 20, 2006, and after Plaintiff's counsel also refused to agree to extend the discovery deadline, the Defendants noticed Mr. Williams' and Mr. Pressley's depositions for November 27 and 30, 2006, respectively, to be taken at Mr. Everman's home, where he apparently maintains his only office.

On November 22, 2006, after learning that the Plaintiff's third-party deposition set for November 28, 2006 had been cancelled, the Defendants noticed Mr. Tucker's deposition for that date, also to be taken at Mr. Everman's home.

9

On November 27, 2006, the Plaintiff filed its Motion for Protective Order, asking the Court to prohibit the Defendants from deposing those three witnesses until the Plaintiff gave adequate advance notice (two weeks in Plaintiff's counsel's estimation), selected an appropriate location, that is, other than Mr. Everman's home, and complied with the Stipulated Protective Order's requirement that any outside counsel assisting Mr. Everman at the depositions sign the attached Confidentiality Agreement. Additionally, although the Plaintiff does not identify any alleged outside defense counsel in its Motion and supporting brief, because the unknown lawyer has not signed the Confidentiality Agreement, the Plaintiff concedes that it has not produced <u>any</u> confidential information during the discovery process.

On December 15, 2006, the Defendants filed their Motion to Compel the subject depositions, and by implication, requested that the Court compel the Plaintiff to produce otherwise responsive information and/or documents that the Plaintiff has withheld on the grounds of confidentiality. The Defendants continue to deny that any attorney is assisting Mr. Everman.

The parties' remaining Motions have been fully briefed and are, therefore, also ripe for determination.

## II. <u>DISCUSSION OF CLAIMS</u>

### A. <u>Defendants' Motion to Amend Admissions</u>

Fed. R. Civ. P. 36(b) provides in relevant part that:

> Any matter admitted [in response to a request for admission] is conclusively established unless the court on motion permits withdrawal or amendment of the admission ... the court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party....

<u>Accord</u> Branch Banking and Trust Company v. Deutz-Allis Corporation, 120 F.R.D. 655, 660 (E.D.N.C. 1998) (denying motion to amend admissions where admitting party had "change of heart" about facts

10

previously admitted; rather, to warrant amendment, moving party must show that facts previously admitted were not true), citing Asea, Inc. v. Southern Pacific Transportation Co., 669 F.2d. 1242, 1248 (9th Cir. 1981) (there is no absolute right to withdraw an admission). In other words, the "purpose of requests for admissions is to expedite trial by establishing certain material facts as true ... unless the party securing the admission can rely on its binding nature, he cannot safely avoid the expense of preparing for litigation on that issue ... to hold otherwise would patently defeat the purpose of the rule." Deutz-Allis Corporation, 120 F.R.D. at 657.

Applying these principles to the record in this case, the Court will not permit the Defendants to now deny facts that they admitted months ago, and that the Plaintiff has reasonably relied upon not only in conducting discovery but also in shaping its theory of the case, particularly where the Defendants had the advice of counsel, then as now, from Mr. Everman. Although the Defendants may have had a "change of heart" concerning the impact of those admissions on this litigation – that is, that they have admitted that their accused product has, at least, some similar physical features as the patented product and that they were aware of the patented product prior to producing their product – they have failed to carry their burden of showing that those facts are not true. Indeed, as discussed above, Mr. and Mrs. Copeland testified consistently with those admissions at their more recent depositions. Accordingly, the Defendants' Motion to Partially Withdraw and Amend their admissions will be denied.

### B. Plaintiff's Motion to Strike Errata Sheets

Rule 30(e) of the Federal Rules of Civil Procedure provides in relevant part:

> If requested by the deponent or a party before completion of the deposition, the deponent shall have 30 days after being notified by the officer that the transcript or recording is available in which to review the transcript or recording and, if there are changes in form or substance, to sign a statement reciting such changes and the reasons given by the deponent for making them.

Although there is no binding authority on point, courts considering the issue have held that a deponent may not submit a Rule 30(e) addendum or errata sheet that materially alters what was said under oath. See, e.g., Burns v. Bd. Of County Comm'rs of Jackson County, 330 F.3d 1275, 1282 (10th Cir. 2003) (errata sheet that materially alters deposition testimony is equally impermissible as a subsequent, contradictory affidavit); DeLoach v. Phillip Morris Companies, Inc., 206 F.R.D. 568, 572-73 (M.D.N.C. 2002) (errata sheet permissible only to "explain" or "clarify," rather than to "contradict," testimony); and Greenway v. International Paper Co., 144 F.R.D. 322, 325 (W.D.La. 1992) (a deposition is "not a take home examination"). In other words, although Rule 30(e) submissions are not limited merely to correction of the stenographer's typographical errors, and may be used to expound upon the witness's oral responses, the errata sheet does not afford the deponent a second bite at the apple in the form of completely reversing the earlier testimony.[1]

Applying these legal principles to the facts in this case, just as the Defendants may not – with the benefit of hindsight – change their written factual admissions, discussed above, neither may they contradict Mr. and Mrs. Copeland's deposition testimony, which they concede was accurately recorded by the court reporter. Indeed, those witnesses' errata sheets are nothing more than a post hoc attempt to reverse potentially damaging admissions, apparently to conform their testimony to what Mr. Everman now believes would be if not a more favorable, then at least a less damaging set of facts. In other words, rather than explain their earlier answers, Mr. and Mrs. Copeland impermissibly seek to directly contradict their testimony, substituting "No" for a "Yes" or other affirmative responses in most instances.

---

[1] Although recognizing that unpublished opinions from other districts have no precedential value, the undersigned notes that most recently, the District Court for the Middle District of North Carolina granted a party's motion to strike a deponent's errata sheet under circumstances indistinguishable from this case. Blundell v. Wake Forest University Baptist Medical Center, 2006 WL 694630, at 3-4 (M.D.N.C. 2006) ("Rule 30(e) should not be interpreted to allow a deponent to materially alter what was said under oath, because a deposition is 'not a take home examination'"), quoting Greenway, 144 F.R.D. at 325.

Accordingly, the Plaintiff's Motion to Strike Mr. and Mrs. Copeland's errata sheets will be <u>granted</u>. Provided, however, that nothing in this ruling limits those witnesses' right to explain or otherwise attempt to ameliorate the effect of their deposition testimony during examination at trial, should this matter reach that stage.

### C. <u>Cross-Motions to Compel Depositions and for Protective Order</u>

At the outset, the undersigned is unaware of any authority considering, much less deciding, whether and under what circumstances a deposition may be taken at the residence of one of the parties' counsel. Moreover, the Court agrees with the Plaintiff's concern that such an arrangement (conducting the depositions of Plaintiff's witnesses at defense counsel's home) is simply inappropriate, particularly in light of the availability of Plaintiff's counsel's offices or other facilities in the Charlotte area. Accordingly, the Defendants will be required to conduct the depositions, ordered below, at either a neutral location or Plaintiff's counsel's office.

The primary difficulty in conducting these depositions has not rested, however, with Mr. Everman or the Defendants. Mr. Everman contacted Plaintiff's counsel sufficiently in advance of the discovery deadline to arrange mutually convenient dates for the depositions. Rather than cooperate reasonably, the Plaintiff unilaterally scheduled other depositions for two of the four days that it had agreed earlier would be available for the Defendants' depositions of Mssrs. Williams, Pressley, and Tucker. Later, the Plaintiff informed the Defendants that the witnesses would be unavailable in any event, due to the Defendants' failure to have their unidentified "outside counsel" sign the Confidentiality Agreement. Moreover, the Plaintiff admits that for the same reason, it has generally withheld otherwise discoverable documents or information.

Although the Court has been troubled by the conduct of counsel during discovery, including Mr. Everman's conduct, the undersigned accepts his repeated assurances that, in his words, there is no

13

"phantom counsel" assisting him, and therefore, there is no outside counsel to sign the Confidentiality Agreement. Accordingly, the Plaintiff's objection – both to the depositions and to responding to discovery generally – on that basis is overruled.

In short, the undersigned will compel the Plaintiff to make Mssrs. Williams, Pressley, and Tucker available for deposition, as set forth below, and in addition will compel the Plaintiff to produce any otherwise discoverable and responsive information or document that it has to date withheld on the basis of the Defendants' or their counsel's alleged failure to comply with the Stipulated Protective Order.

Although as discussed above, the conduct of the parties' respective counsel has been, at times, unprofessional and generally unpleasant, the Court will refrain from imposing sanctions against the parties or their counsel at this time, except that the parties' respective counsel shall be prohibited from receiving and/or retaining payment for attorneys' fees related to certain of the subject Motions, as ordered below.

Finally, the undersigned specifically cautions the parties and their respective counsel that any further failure to respond to the opposing parties' reasonable discovery requests, or to comply with the Stipulated Protective Order, this Court's other Orders, the Local Rules, or the Federal Rules of Civil Procedure may result in the imposition of further sanctions. **Sanctions can include the parties and/or their counsel being required to pay the opposing parties' costs, including reasonable attorney's fees, and may also include entry of judgment in favor of the opposing parties**.[2]

---

[2]The Fourth Circuit has emphasized the significance of both establishing a history of dilatory action and warning to the offending party of what may follow prior to imposing dispositive sanctions. See, e.g., Hathcock v. Navistar Int'l Transp. Corp., 55 F.3d 36, 40 (4th Cir. 1995); Choice Hotels Int'l v. Goodwin & Boone, 11 F.3d 469, 473 (4th Cir. 1993); and Lolatchy v. Arthur Murray, Inc., 816 F.2d 951, 953 (4th Cir. 1987).

## III. ORDER

**NOW, THEREFORE, IT IS ORDERED:**

1. The "Defendants' Motion to Partially Withdrawal [sic] and Amend ... Response to ... Requests for Admissions" (document #79) and "Plaintiff's Renewed Motion to Compel the Production of Defendant's Patent Applications ..." (document #82) are **DENIED**.

2. "Plaintiff's Motion to Strike Errata Sheets of Defendant Jerry Copeland and Witness Linda Copeland" (document #86) is **GRANTED** and the errata sheets related to the depositions of Mr. and Mrs. Copeland are **STRICKEN**.

3. The "Defendants' Motion for Extension of Time to Serve Defendants' Expert Witness Report" (document #91) is **GRANTED**, and the "Plaintiff's Motion for Protective Order and to Quash ... Subpoenas ... " (document #96) and the "Defendants' Motion to Compel Depositions ..." (document #98) are **GRANTED IN PART** and **DENIED IN PART**, that is:

   a. On or before February 20, 2007, the Plaintiff shall produce any and all documents or other information that is responsive to any of the Defendants' discovery requests, including any documents or information which the Plaintiff earlier withheld on grounds of the Defendants' or their counsel's alleged failure to comply with the Stipulated Protective Order;

   b. On or before March 20, 2007, the Defendants shall serve their expert reports;

   c. On or before March 20, 2007, the Plaintiff shall make Steve Williams, Rick Pressley, and Richard Tucker available for depositions which shall be conducted at a date, time, and place mutually agreeable to the parties. If the parties are unable to so agree, the depositions shall take place at a date, time and location noticed by the Defendants, provided that the location shall be a neutral site obtained at the Defendants' expense or the office of Plaintiff's counsel, and that the Defendants shall give 14 calendar days notice through the service of Notices of Deposition.

4. "Defendants' Motion for Extension of Dispositive Motions Deadline" (document #104) is **GRANTED** and the dispositive motions deadline is extended to April 20, 2007.

5. Defense counsel shall not receive or retain any attorneys' fees or other payments arising from or relating to "Defendants' Motion to Partially Withdrawal [sic] and Amend ... Response to ... Requests for Admissions" (document #79) and/or "Plaintiff's Motion to Strike Errata Sheets of Defendant Jerry Copeland and Witness Linda Copeland" (document #86), <u>and shall return to the Defendants any such fees or payments previously received</u>.

6. Plaintiff's counsel shall not receive or retain any attorneys' fees or other payments arising from or relating to "Plaintiff's Renewed Motion to Compel the Production of Defendant's Patent Applications ..." (document #82) and/or "Defendants' Motion for Extension of Time to Serve Defendants' Expert Witness Report" (document #91), <u>and shall return to the Plaintiff any such fees or payments previously received</u>.

7. Plaintiff and defense counsel shall send their respective clients a copy of this Memorandum and Order <u>within two (2) business days of its electronic receipt</u>.

8. <u>In the event that either party appeals this Memorandum and Order to the District Judge to whom this case is assigned (the Honorable Frank D. Whitney), all rulings contained herein shall remain in force and the parties and their counsel shall abide by them until such time as those rulings are affirmed or vacated</u>.

9. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties; <u>and to the Honorable Frank D. Whitney</u>.

**SO ORDERED.**

Signed: January 19, 2007

*Carl Horn, III*

Carl Horn, III
United States Magistrate Judge